UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE LAMAR DUNBAR,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendant. | No.  2:19-cv-1359 JAM DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that officers used excessive force against him, denied him medical treatment, and threatened him. Presently before the court is defendant's fully briefed motion for summary judgment and motion for stay and to modify the discovery and scheduling order.  For the reasons set forth below, the court will recommend that the motion for summary judgment be granted and deny the motion for stay as moot.

## BACKGROUND

### I.    Relevant Procedural History

Plaintiff initiated this action by filing the complaint in the United States District Court for the Northern District of California on June 21, 2019.[1]  (ECF No. 1.)  The complaint was

---

[1] Under the prison mailbox rule, a document is deemed served on the date a prisoner signs the document and gives it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 276

transferred to this court on July 19, 2019. (ECF Nos. 5, 7.) Plaintiff's original (ECF No. 1) and first amended (ECF No. 14) complaints were screened and dismissed for failure to state a claim. (ECF Nos. 12, 16.) The undersigned recommended that the second amended complaint be dismissed without leave to amend for failure to state a claim. (ECF No. 18.) Thereafter, plaintiff filed objections indicating he had been confused, but felt he could state a cognizable claim. (ECF No. 19.) The court vacated the findings and recommendations and granted plaintiff one final opportunity to file an amended complaint. (ECF No. 20.) Plaintiff filed a third amended complaint. (ECF No. 21.) Upon screening the court determined the third amended complaint stated a cognizable claim against defendant N. Smith.[2] (ECF No. 22.)

Defendant Smith was served (ECF No. 28), and the parties proceeded to discovery (ECF No. 33). Thereafter, defendants filed the instant motion for summary judgment. (ECF No. 34.) Plaintiff filed an opposition (ECF No. 37), and defendant filed a reply (ECF No. 39).

## II.    Allegations in the Complaint

The events giving rise to the claim occurred while plaintiff was incarcerated at High Desert State Prison (HDSP). (ECF No. 21 at 4.) Plaintiff alleges that on November 13, 2015 John Doe 1 pointed a handgun at his head and told him to get on the ground and put his hand behind his back. (Id.) Plaintiff complied with the request. John Doe 1 handcuffed plaintiff and dragged him by his shirt into the scullery so that they were out of view of the surveillance camera. John Doe 1 then turned plaintiff over, put his knee on plaintiff's throat, and held plaintiff's head asking, "where is it motherfucker?" John Doe 1 continued to apply pressure on plaintiff's throat until he passed out.

When plaintiff regained consciousness, he was surrounded by five officers. Officer Smith slapped plaintiff in the face and said, "Don't fucking act like you're passing out. Where is it?" John Doe 1 asked, "where the fuck is it?" (Id. at 5.) Plaintiff nodded his head in the direction of

_____

(1988).

[2] The undersigned further determined that plaintiff stated a claim against John Doe 1 but indicated that the court could not serve an unknown defendant. (ECF No. 22 at 5.) Plaintiff was advised that failure to identify and move to amend the complaint to name this defendant during the course of discovery John Doe 1 would be dismissed from this action. (Id.) It appears that plaintiff was not able to learn the identity of John Doe 1 during discovery.

2

1   a small bag containing about ten cellphones. John Doe 5 retrieved the bag of cell phones. As

2   plaintiff was lifted off the ground Smith kicked plaintiff in the upper back and told plaintiff he

3   should have made it easier.

4       As plaintiff was escorted out, he looked at Smith and said, "you're a real bitch." Smith

5   then rushed at plaintiff, screamed obscenities at him, grabbed his neck, and choked plaintiff. The

6   officers moved plaintiff to the dining area where he was pushed against a wall and Smith punched

7   him in the stomach.

8       Plaintiff alleges he suffered a headache but was denied medical attention. (Id.) After

9   officers learned that plaintiff was making a complaint about the incident, John Doe 1 told plaintiff

10  that if he dropped the complaint, he could get him transferred to the prison of his choice. That

11  same week John Does 2 and 3, coerced plaintiff into saying that he would not follow through with

12  his claims. Plaintiff states that he complied out of fear of retaliation until he was transferred to

13  another institution.

14      After his transfer, he spoke to John Doe 4 by phone regarding the excessive force incident.

15  Plaintiff explained the facts and John Doe 4 stated that he would get back to plaintiff. (Id. at 5-6.)

16  Plaintiff never heard back from John Doe 4. (Id. at 6.) He also claims that John Doe 4 destroyed

17  any records of plaintiff ever being housed at HDSP.

18                  **MOTION TO STAY DISCOVERY AND MODIFY DSO**

19      Defendant filed a motion for stay and to modify the discovery and scheduling order

20  ("DSO") concurrently with the motion for summary judgment. (ECF No. 35.) Therein they ask

21  for discovery to be stayed because the motion for summary judgment based on failure to exhaust

22  could dispose of the entire action. Because discovery closed on June 25, 2021 and the

23  undersigned will recommend that defendant's motion be granted, the court will deny the motion

24  to stay discovery and modify the DSO as moot.

25                          **MOTION FOR SUMMARY JUDGMENT**

26      Defendant argues that he is entitled to summary judgment because plaintiff failed to

27  exhaust administrative remedies. (ECF No. 34.) Defendant alleges plaintiff filed an appeal

28  ////

1    regarding the incident giving rise to the claim, but failed to pursue the appeal beyond the first

2    level of review.

3         Plaintiff's opposition contains one page of arguments, a two-page declaration, and a

4    CDCR 602 form.  (ECF No. 37.)  Plaintiff also filed an exhibit that appears to contain two

5    additional pages of the 602 filed as an exhibit to his opposition.  (ECF No. 40.)  Plaintiff

6    acknowledges that he did not pursue an appeal through all three levels.  He argues he should be

7    excused from compliance with the exhaustion requirement because prison officials interfered with

8    his ability to exhaust administrative remedies.  (ECF No. 37 at 2-3.)

9    **I.    Legal Standards**

10            **A. Summary Judgment Under Rule 56**

11            Summary judgment is appropriate when the moving party "shows that there is no genuine

12   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

13   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of

14   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d

15   376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving

16   party may accomplish this by "citing to particular parts of materials in the record, including

17   depositions, documents, electronically stored information, affidavits or declarations, stipulations

18   (including those made for purposes of the motion only), admissions, interrogatory answers, or

19   other materials" or by showing that such materials "do not establish the absence or presence of a

20   genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

21   Fed. R. Civ. P. 56(c)(1).

22            "Where the non-moving party bears the burden of proof at trial, the moving party need

23   only prove there is an absence of evidence to support the non-moving party's case."  Oracle

24   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

25   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

26   motion, against a party who fails to make a showing sufficient to establish the existence of an

27   element essential to that party's case, and on which that party will bear the burden of proof at

28   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

4

1    of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.  In such

2    a circumstance, summary judgment should "be granted so long as whatever is before the district

3    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

4    56(c), is satisfied." <u>Id.</u>

5         If the moving party meets its initial responsibility, the burden shifts to the opposing party

6    to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec.</u>

7    <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  In attempting to establish the

8    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

9    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

10   admissible discovery material, in support of its contention that the dispute exists.  <u>See</u> Fed. R.

11   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

12   fact "that might affect the outcome of the suit under the governing law," <u>Anderson v. Liberty</u>

13   <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809

14   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

15   reasonable jury could return a verdict for the nonmoving party," <u>Anderson</u>, 477 U.S. at 248.

16        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

17   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>

18   <u>v. Cent. Costa Cnty. Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation

19   omitted).  It is the opposing party's obligation to produce a factual predicate from which the

20   inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir.

21   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22   show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586

23   (citations omitted).  "Where the record is taken as a whole could not lead a rational trier of fact to

24   find for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587 (quoting <u>First Nat'l</u>

25   <u>Bank</u>, 391 U.S. at 289).

26        On a motion for summary judgment, it is inappropriate for the court to weigh evidence or

27   resolve competing inferences.  "In ruling on a motion for summary judgment, the court must

28   leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

1    inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208,

2    210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

3         Generally, when a defendant moves for summary judgment on an affirmative defense on

4    which he bears the burden of proof at trial, he must come forward with evidence which would

5    entitle him to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v.

6    South, 965 F.2d 1532, 1536 (9th Cir. 1992).  The failure to exhaust administrative remedies is an

7    affirmative defense that must be raised in a motion for summary judgment rather than a motion to

8    dismiss.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  On a motion for

9    summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there

10   was an available administrative remedy, and that the prisoner did not exhaust that available

11   remedy."  Id. at 1172.  If the defendant carries that burden, the "burden shifts to the prisoner to

12   come forward with evidence showing that there is something in his particular case that made the

13   existing and generally available administrative remedies effectively unavailable to him."  Id.  The

14   ultimate burden of proof remains with the defendant, however.  Id.  If material facts are disputed,

15   summary judgment should be denied, and the "judge rather than a jury should determine the

16   facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury

17   decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

18         **B. Exhaustion of Administrative Remedies**

19              **1.  PLRA Exhaustion Requirement**

20         Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

21   are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA

22   mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 .

23   . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

24   until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The

25   exhaustion requirement "applies to all inmate suits about prison life, whether they involve general

26   circumstances or particular episodes, and whether they allege excessive force or some other

27   wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Regardless of the relief sought, a prisoner

28   must pursue an appeal through all levels of a prison's grievance as long as some remedy remains

1    available.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy

2    remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,'

3    and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th

4    Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731, 736

5    (2001)).

6          "Under § 1997e(a), the inmate exhaustion requirement hinges on the 'availab[ility]' of

7    administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

8    unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original).  In

9    discussing availability in Ross the Supreme Court identified three circumstances in which

10   administrative remedies were unavailable: (1) where an administrative remedy "operates as a

11   simple dead end" in which officers are "unable or consistently unwilling to provide any relief to

12   aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no

13   ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates

14   from taking advantage of a grievance process through machination, misrepresentation, or

15   intimidation." Id. at 1859-60.  "[A]side from [the unavailability] exception, the PLRA's text

16   suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

17   circumstances.'" Id. at 1856.  "[M]andatory exhaustion statutes like the PLRA establish

18   mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

19         "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S.

20   199, 216 (2007).  It is the defendant's burden "to prove that there was an available administrative

21   remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th

22   Cir. 1996)).  The burden then "shifts to the prisoner to come forward with evidence showing that

23   there is something in his particular case that made the existing and generally available

24   administrative remedies unavailable to him." Id.

25         A prisoner is required to exhaust administrative remedies before filing suit. McKinney v.

26   Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curium).  Section 1997e(a) mandates that "[n]o

27   action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted.  42

28   U.S.C. § 1997e(a).  "The 'available' 'remed[y]' must be 'exhausted' before a complaint under §

1  1983 may be entertained." <u>Booth</u>, 532 U.S. at 738.  "Exhaustion subsequent to the filing of suit

2  will not suffice." <u>McKinney</u>, 311 F.3d at 1199.

3           **2.  California's Inmate Appeals Process**

4       In California, prisoners may appeal "any policy, decision, action, condition, or omission

5  by the department or its staff that the inmate or parolee can demonstrate as having a material

6  adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

7  During the time relevant to this action,[3] inmates in California proceeded through three levels of

8  appeals to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal

9  form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the

10  Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code

11  Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  <u>Id.</u>

12  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

13  prisoner's administrative remedies.  <u>See id.</u>, § 3084.7(d)(3).  However, a cancellation or rejection

14  decision does not exhaust administrative remedies.  <u>Id.</u>, § 3084.1(b).

15       A California prisoner is required to submit an inmate appeal at the appropriate level and

16  proceed to the highest level of review available to him.  <u>Butler v. Adams</u>, 397 F.3d 1181, 1183

17  (9th Cir. 2005); <u>Bennet v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance,

18  an inmate is required to "list all staff members involved and shall describe their involvement in

19  the issue." Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known

20  and available to him/her regarding the issue being appealed at the time," and they must "describe

21  the specific issue under appeal and the relief requested." <u>Id.</u> § 3084.6(b)(8).

22       An inmate has thirty calendar days to submit their grievance from the occurrence of the

23  event or decision being appealed, or "upon first having knowledge of the action or decision being

24  appealed." Cal. Code Regs. tit 15, § 3084.8(b).

25  ////

26  _____

27  [3] In 2020, California changed the grievance system from a three-tier system to a two-tier system.
The change became effective on June 1, 2020, after plaintiff initiated the relevant appeals in the

28  present case.  <u>See</u> Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text
refer to the prior law.

1    **II.    Material Facts**

2            Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule

3    260(a).  (ECF No. 34-3.)  Plaintiff's filing in opposition to defendant's motion for summary

4    judgment fails to comply with Local Rule 260(b).  (ECF No. 37.)  Rule 260(b) requires that a

5    party opposing a motion for summary judgment "shall reproduce the itemized facts in the

6    Statement of Undisputed Facts and admit those facts are undisputed and deny those that are

7    disputed, including with each denial a citation to the particular portions of any pleading, affidavit,

8    deposition, interrogatory answer, admission, or other document relied upon in support of that

9    denial."

10           The court is mindful of the Ninth Circuit's instruction that district courts are to "construe

11   liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary

12   judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly,

13   the court considers the record before it in its entirety despite plaintiff's failure to be in strict

14   compliance with the applicable rules.  However, only those assertions in the opposition that have

15   evidentiary support in the record will be considered.  In light of plaintiff's pro se status, the court

16   has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted

17   in the defendant's DSUF.

18           Plaintiff has not challenged, and nothing in the record contradicts, any of the facts relating

19   to the timing of the filing and processing of his appeal, accordingly the facts surrounding these

20   events shall be deemed admitted for purposes of the motion.  Fed. R. Civ. P. 56(e)(1) ("If a party .

21   . . fails to properly address another party's assertion of facts as required by Rule 56(c), the court

22   may . . . consider the fact undisputed for purposes of the motion.")  While the parties dispute the

23   implication of plaintiff's failure to pursue his grievance beyond the first level of review, the

24   actual events are not in dispute.

25           During the relevant time period, plaintiff was an inmate in the custody of CDCR.  (DSUF

26   (ECF No. 34-3) at ¶ 5; Third Amended Complaint ("TAC") (ECF No. 21) at 1, 4.)  The incident

27   giving rise to plaintiff's claim occurred on November 13, 2015.  (DSUF (ECF No. 34-3) at ¶ 6;

28   TAC (ECF No. 21) at 4.)

CDCR uses a computer program system to electronically log and track inmate appeals through all levels of review.  (DSUF (ECF No. 34-3) at ¶ 1.)  Plaintiff filed an appeal related to his allegations regarding the events giving rise to the claim.  (DSUF (ECF No. 34-3) at ¶ 8.)  The appeal was assigned log no. HDSP-O-16-01570.  (Id.)  Therein, plaintiff alleged that defendant Smith and another officer used excessive force against him on November 13, 2015.  (DSUF (ECF No. 34-3) at ¶ 6, 8.)  Plaintiff "requested that the matter be investigated, action be taken to rectify the matter, and the officers reprimanded."  (DSUF (ECF No. 34-3) at ¶ 8.)

Appeal no. HDSP-O-16-01570 was partially granted at the first level of review on June 3, 2016.  (Id.)  The first level decision stated that the allegations were being reviewed and the matter would be referred to the Office of Internal Affairs for follow-up and potentially an investigation.  (Id.)  The first level decision stated that if plaintiff wished to appeal the decision further and if he wanted to exhaust, he would need to submit the appeal through all three levels of review.  (Id.)  Plaintiff did not submit appeal no. HDSP-O-16-01570 for further review.

The only appeals plaintiff submitted to the HDSP Grievance Office were log nos. HDSP-O-16-01570 and HDSP-E-15-03038.  (DSUF (ECF No. 34-3) at ¶ 12.)  Appeal log no. HDSP-E-15-03038 sought information about plaintiff's case records.  (DSUF (ECF No. 34-3) at ¶ 10; (ECF No. 34-5 at 6).)  The appeal was rejected on November 4, 2015 for failure to include necessary supporting documents.  (DSUF (ECF No. 34-3) at ¶ 10.)  Records indicate that plaintiff did not re-submit appeal log no. HDSP-E-15-03038.  (Id.)

Plaintiff was transferred from HDSP to Folsom State Prison on December 30, 2015.  (DSUF (ECF No. 34-3) at ¶ 11.)  Thereafter, plaintiff was transferred to Centinella State Prison ("CEN").  (Id.)  Inmates may submit or re-submit an appeal concerning events that occurred at a different prison.  (Id.)  Plaintiff's appeal regarding events that occurred at HDSP was filed while he was housed at CEN.  (Id.)  Plaintiff was interviewed telephonically by the HDSP Grievance Office.  (Id.)

The only appeal plaintiff submitted for third level review between November 2015 and June 28, 2019 was a group appeal regarding allegations of a contaminated water supply at San Quentin State Prison.  (DSUF (ECF No. 34-3) at ¶ 13.)

1    **III.    Analysis**

2           Defendant argues that plaintiff filed an appeal related to his allegations in this action but

3    failed to properly exhaust by submitting it for second and third level review.  (ECF No. 34-2 at 6.)

4    In the opposition plaintiff argues that he should be excused from exhaustion because he did not

5    understand the appeals process, officials refused to accept his grievance, his transfer interfered

6    with his ability to file an appeal, and a prison official told plaintiff he would "follow up."  (ECF

7    No. 37 at 1-3.)

8           In order to exhaust, an inmate is required to obtain a decision at each level of review.

9    Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b);

10   Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).  The first level response to Appeal No.

11   HDSP-O-16-01570 specifically stated that it must be appealed through the third level in order to

12   be exhausted.  (ECF No. 34-5 at 10.)  However, plaintiff did not pursue Appeal No. HDSP-O-16-

13   01570 beyond the first level of review.  Because he did not receive a decision at all three levels

14   appeal No.  HDSP-O-16-01570 did not exhaust administrative remedies.

15          Defendant has put forth evidence showing that administrative remedies were available and

16   plaintiff failed to exhaust administrative remedies.  Thus, the burden now shifts to plaintiff to put

17   forth evidence that "there is something in his particular case that made the existing and generally

18   available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1172.

19                    **A.  Officers at HDSP Refused to Accept his Grievance Form**

20          Plaintiff argues administrative remedies were unavailable because officers at HDSP

21   refused to accept his grievance.  (ECF No. 37 at 1.)  For purposes of resolving the instant

22   summary judgment motion, the court will take as true plaintiff's allegation that he was prevented

23   from filing an appeal while he was housed at HDSP.  However, the parties agree that plaintiff

24   filed an appeal after his transfer to CEN.  Additionally, the parties agree that the appeal was

25   accepted for first level review and plaintiff was interviewed regarding the grievance.  (ECF No.

26   34-5 at 10-11; ECF No. 37 at 3.)  Defendant argues that plaintiff has not alleged that prison

27   officials prevented him from pursuing a grievance after his transfer and that plaintiff made no

28   ////

1 | effort to pursue the appeal after he was interviewed during the first level of review.  (ECF No. 39

2 | at 1-3.)

3 |       HDSP officers' refusal to accept plaintiff's grievance form does not excuse plaintiff from

4 | the PLRA's exhaustion requirement because he was able to submit a grievance after his transfer.

5 | See Beckwith v. McCullough, No. EDCV 16-662 MWF (MRW), 2017 WL 1377732 at *3 (C.D.

6 | Cal. Feb. 6, 2017) (finding plaintiff's allegation that officers refused to give him grievance forms

7 | failed to show that administrative remedies were unavailable because plaintiff was able to submit

8 | a grievance after he was transferred to a different facility).  Thus, administrative remedies were

9 | available to plaintiff even though prison officials initially refused to accept his grievance.

10 | **B.  Lack of Knowledge**

11 |       Plaintiff argues that he did not have "proper knowledge" of the appeals process, but he

12 | "still took every effort to resolve or remedy the adverse actions of [the] officers while being

13 | obstructed." (ECF No. 37 at 1.)

14 |     "Lack of knowledge of the exhaustion requirement does not excuse an inmate's failure to

15 | exhaust administrative procedures."  Gurley v. Clark, 620 Fed. Appx. 671, 673 (10th Cir. 2015);

16 | see also Ross, 578 U.S. at 642 (a reasonable misunderstanding of the prison's grievance

17 | procedure does not render the process "unavailable" for exhaustion purposes).  Accordingly,

18 | plaintiff is not excused from exhausting because he did not understand the appeals process.

19 | **C.  Transfer and Loss of Documents**

20 |       Plaintiff alleges that another inmate was helping him file an appeal after he left HDSP and

21 | before he arrived at CEN.  (ECF No. 37 at 2.)  An officer took the documents related to the appeal

22 | telling plaintiff they would be with the rest of his property, but when plaintiff arrived at CEN the

23 | papers were gone.  (ECF No. 37 at 3.)  Plaintiff appears to argue that his transfer and the loss of

24 | his papers made the appeals process unavailable.

25 |       Plaintiff is not excused from the PLRA's exhaustion requirement based on his transfer

26 | from HDSP to CEN.  See Beckwith v. McCullough, No. EDCV 16-662 MWF (MRW), 2017 WL

27 | 1377732 at *3 (C.D. Cal. Feb. 6, 2017) (plaintiff not excused from exhaustion based on his

28 | transfer to another prison facility); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir.

1    2002) ("The fact that Medina-Claudio happened to be a prisoner in various locations, and under

2    the custody of different officials, does not affect his obligation to exhaust his administrative

3    remedies before filing suit"); <u>Howard v. Baca</u>, No. CV 10-5081-JFW (OP), 2011 WL 5570086 at

4    *5 (C.D. Cal. Sept. 27, 2011) (same); <u>Flournoy v. Navarro</u>, No. CV 05-7708 PA (FFM), 2008

5    WL 4184650 at *7 (C.D. Cal. Sept. 10, 2008) (same).

6         Additionally, inmates are allowed to appeal incidents at prison facilities even after they

7    have been transferred.  (DSUF (ECF No. 34-3) at ¶ 11.)  Thus, administrative remedies were

8    available to plaintiff even after he was transferred away from HDSP.

9         Further, the loss of documents during transfer did not make administrative remedies

10   unavailable.  Plaintiff filed appeal no. HDSP-O-16-01570[4], after his arrival at CEN.  This appeal

11   was accepted by the HDSP appeals office, rather than rejected for failure to attach the necessary

12   supporting documents.  Thus, the loss of documents did not make administrative remedies

13   unavailable after his transfer.

14                    **D.  Statement During Phone Interview**

15        After arriving at CEN, plaintiff filed a grievance regarding the events giving rise to the

16   claim.  The HDSP warden interviewed plaintiff over the phone, and he was interviewed in person

17   by an internal affairs officer regarding his appeal. Both officials told plaintiff they would follow

18   up, but that never happened.  (<u>Id.</u>)  Plaintiff argues that he should be excused from exhausting

19   because their failure to contact him.

20        Administrative remedies were not unavailable to plaintiff based on officials' failure to

21   follow up.  Cases where courts have found prison officials prevented inmates from exhausting

22   involve threats of retaliation if inmates pursued their appeal rights <u>McBride v. Lopez</u>, 807 F.3d

23   982, 987 (9th Cir. 2015) (as amended), incorrectly informed inmates that no further remedies

24   were available <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam), sent

25   plaintiff on a "wild goose chase," <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226, or unreasonably

26   ////

27

28   _____
     [4] As set forth above, appeal no. HDSP-O-16-01570 concerned the events giving rise to plaintiff's
     claim in this action.

                                   13

1    delayed consideration of his grievances, <u>Andres v. Marshall</u>, 867 F.3d 1076, 1078-79 (9th Cir.

2    2017).

3          Prison officials did not tell him that he needed to wait for their response before appealing

4    to the next level of review or that he did not need to continue to pursue the appeal in order to

5    exhaust.  Accordingly, the court finds that plaintiff has failed to establish that the prison officials'

6    statements that they would "follow up" mislead him about his obligation to pursue his appeal

7    through all three levels of review.

8                              **E.  Administrative Remedies were Available**

9          As set forth above, it is undisputed that plaintiff failed to pursue an appeal related to his

10   claims in this action through all three levels of review.  Additionally, he has failed to show that

11   administrative remedies were unavailable to him for any of the reasons stated in his opposition.

12   Therefore, defendant's motion for summary judgment should be granted based on plaintiff's

13   failure to exhaust administrative remedies.

14                                     **CONCLUSION**

15         For the reasons set forth above, IT IS HEREBY ORDERED that defendant's motion for

16   stay and to modify the DSO (ECF No. 35) is denied as moot.

17         IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF

18   No. 34) be granted.

19         These findings and recommendations will be submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days

21   after being served with these findings and recommendations, either party may file written

22   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

23   Findings and Recommendations."  The parties are advised that failure to file objections within the

24   ////

25   ////

26   ////

27   ////

28   ////

                                              14

1  specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v.</u>

2  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  Dated: January 5, 2022

4

5

6                                                          _____

7                                                          DEBORAH BARNES
                                                           UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13  DB:12
    DB/DB Prisoner Inbox/Civil.Rights/S/dunb1359.msj  fr
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28